## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 02 2018, 9:56 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Lisa M. Johnson
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Gregory Sobin,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

March 2, 2018

Court of Appeals Case No.
49A02-1710-PC-2357

Appeal from the Marion Superior
Court

The Honorable Kurt Eisgruber,
Judge

Trial Court Cause No.
49G01-9910-PC-187949

**Barnes, Judge.**

## Case Summary

[1] Gregory Sobin appeals the denial of his petition for post-conviction relief. We affirm.

## Issue

[2] The sole issue before us is whether the post-conviction court properly determined that Sobin did not receive ineffective assistance of trial counsel.

## Facts

[3] In October 1999, the State charged Sobin with two counts of Class B felony arson and one count of Class D felony arson. On April 17, 2000, the State filed an additional information alleging that Sobin was an habitual offender. In September 2000, the trial court appointed Daniel Mohler to represent Sobin. In November 2001, Mohler withdrew, and Carolyn Rader became Sobin's new counsel. The State amended the habitual offender information on February 9, 2001[1] to remedy a purported defect. Sobin maintains that he was never notified that the defect had been remedied.

[4] Sobin's jury trial was slated for February 25, 2002. Rader and Attorney Steven Poore represented him at trial. In open court before the trial commenced, the State made a plea offer of a fixed term of sixteen years with six years

---

[1] Both the State and the post-conviction court state that the habitual offender information was amended on February 26, 2002. Sobin disputes this date and maintains that the habitual enhancement information was amended on February 9, 2001. We agree. The chronological case summary shows that the State filed a new habitual offender charging information on February 9, 2001. App. Vol. II p. 14.

suspended; Sobin refused the offer, maintaining his innocence and identifying a different perpetrator. The jury trial was conducted on February 25-26, 2002, and the jury returned guilty verdicts on all counts. The trial court entered a judgment of conviction for one count of class B felony arson, merged the remaining counts, and vacated their judgments of conviction. The jury subsequently determined that Sobin was also an habitual offender. On May 1, 2002, he was sentenced to serve ten years in the Department of Correction; his sentence was enhanced by thirty years because he was an habitual offender, for an aggregate sentence of forty years.

[5] Sobin filed a direct appeal arguing that the trial court abused its discretion in finding him competent to stand trial. A panel of this court affirmed his conviction. *See Sobin v. State,* No. 49A02-0205-CR-424 (Ind. Ct. App. April 14, 2003). On May 12, 2010, Sobin filed a petition for post-conviction relief, alleging that he had received ineffective assistance of counsel. Following a hearing on May 2, 2017, the post-conviction court denied his petition, finding that Sobin did not suffer prejudice by counsel's failure to inform him of the amended charge because he had rejected the plea offer based on his claim of innocence, not because he believed the habitual offender information was defective. Sobin now appeals.

## Analysis

[6] A petitioner in a post-conviction proceeding bears the burden of proof, and an unsuccessful petitioner appeals from a negative judgment. *Pruitt v. State,* 903 N.E.2d 899, 905 (Ind. 2009). A petitioner appealing from a negative judgment

must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court. *Id*. We will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion and the post-conviction court has reached the opposite conclusion. *Id*.

[7] Sobin argues that his trial counsel rendered ineffective assistance by failing to advise him that a defect in the initial habitual offender charging information had been corrected. He maintains that counsel's omission led him to reject a favorable plea offer under the mistaken belief that he could not be convicted under the initial defective information.

[8] "To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance." *McCullough v. State,* 987 N.E.2d 1173, 1176 (Ind. Ct. App. 2013) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)), *trans. denied.* The failure to satisfy either prong will cause the claim to fail. *Id*. "Counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms." *Id*. To show prejudice from ineffective assistance of counsel where a plea offer has been rejected or lapsed because of counsel's deficient performance, Sobin must demonstrate a "reasonable probability [that he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel." *Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012).

[9]     Here, the post-conviction court entered the following relevant findings and

conclusions:

FINDINGS OF FACT

* * * * *

5.  Concomitantly with his most recent PCR petition, [Sobin]
also filed a motion for sentence modification. Although the State
maintained its objection to the modification, the Court agreed to
allow [Sobin] to present evidence on the motion as part of his
case at the PCR evidentiary hearing.

6.  The Court held an evidentiary hearing on May 2, 2017. [A]t
the hearing [Sobin] testified in his own behalf. He also submitted
affidavit testimony from the many attorneys who had represented
him in this case at one time or another. These include attorneys
Dan Mohler, Steven Poore, Eric Koselke, Carolyn Rader, and
Kay Beeler. Additionally, he submitted the affidavit of Linda
Davidson, his fiancée, as a character statement. [Sobin] also
submitted the appellate record of proceedings as a documentary
exhibit. At the State's request, the Court took judicial notice of
its file in this matter.

7.  Much of [Sobin]'s testimony at the evidentiary hearing was
directed to his modification motion. He did testify that he did
not believe that the State could prove the habitual offender
allegation, because one of the alleged prior convictions from
Illinois, did not qualify under that Indiana habitual statute. He
also stated that none of his trial counsels ever informed him
about the amended habitual enhancement information that was

filed on February 26, 2002[2]. On cross-examination, [Sobin] acknowledged that his belief regarding the habitual enhancement information did not come from any advice he was given by his attorneys, rather this belief entirely came from his own understanding of Illinois and Indiana law, based on his substantial involvement with the criminal justice system.

8. A review of the transcript of the proceedings shows that prior to trial, the following exchange occurred between the parties:

MS. C. RADER [DEFENSE COUNSEL]: I have authority from [Sobin], as of yesterday, to try to negotiate a plea. . . . .

* * * * *

THE COURT: . . . . And, Miss Rader, are we going to trial, or is Mr. Sobin going to accept the State's offer?

MS. C. RADER: Mr. Sobin, at this point, has – has rejected the State's offer. That offer was 16 years with six suspended, doing ten executed, which would be five if there is two for one, and I believe that the credit time is in the mid-500 days.

THE COURT: So, two-and-a-half years you'd have to do? You don't want to take that, Mr. Sobin?

MR. G. SOBIN: No, ma'am.

---

[2] According to the record, the habitual offender information was amended on February 9, 2001.

THE COURT:  Do you understand that if you go to trial, and you're found guilty, the minimum the Court could give you would be 16 years?

MR. G. SOBIN:  Yes, ma'am.

THE COURT:  And the maximum would be 50?

MR. G. SOBIN:  Yes, ma'am.

THE COURT:  And with your criminal history, you'd be looking at the presumptive, or above; do you understand that?

MR. G. SOBIN:  Yes, ma'am.

THE COURT:  And, even considering all of that, you don't want to plead guilty?

MR. G. SOBIN:  Like I said, I didn't do it.

(Trial Tr. pp. 24-27).

9.  Based on a review of its file in this matter, the Court further notes that in the pre-sentence investigation, [Sobin] adamantly maintained his innocence of the crime, and claimed the fire was started by "Luis Maldonnado."  (Presentence Report, filed April 3, 2002).

10.  For the reasons discussed below, the Court find that the facts are with the State and against [Sobin].

CONCLUSIONS OF LAW

\* \* \* \* \*

2.       *Ineffective Assistance of Counsel*:

\* \* \* \* \*

A review of the record and a review of the evidence adduced at the post-conviction evidentiary hearing leads to the conclusion that [Sobin] has failed to meet his burden of proof. The record unequivocally establishes that [Sobin] rejected a very favorable plea offer, made by the State, on the record in open court, not because of any misadvice or because he was misinformed about the state of the pleadings, but instead he rejected the State's offer because, "Like, I said, I didn't do it." (Trial transcript, p. 27).

Despite his self-serving statements at the evidentiary hearing, there is no reason to believe that [Sobin]'s decision to not plead guilty was predicated on his attorney's advice, or for that matter, even on his own understanding of the law. Instead, his decision was based on his protestation of innocence. It is well-settled in Indiana that when an accused protests his innocence no guilty plea may be entered. *Harshman v. State,* 232 Ind. 618, 115 N.E.2d 501, (1953); *Ross v. State,* 456 N.E.2d 420, (Ind. 1983); *Carter v. State,* 739 N.E.2d 126, (Ind. 2000). Consequently, having failed to establish that he relied on the misadvice of counsel and having failed to establish that he would have pleaded guilty at all, the Court finds that [Sobin] has failed to meet his burden of proof.

App. Vol. III pp. 95-97, 100-101.

The record does not establish that Sobin was misadvised by his trial counsel. To the contrary, by Sobin's own admission, the theory that he could not be convicted under the initial habitual offender information originated with him alone, as evidenced by the following:

> Q [STATE]: Mr. Sobin, as I understand it, you've been in and out of the system both in Indiana and Illinois a lot, haven't you?
>
> A [SOBIN]: Yes, sir.
>
> * * * * *
>
> Q: And the information regarding your – the habitual offender filing in this case, the first habitual offender filing and that you believed it was defective, that came from your knowledge and understanding of the law; is that correct?
>
> A: In Illinois particularly, yes, sir.
>
> Q: Right, okay. The – so that was not something that the – your attorneys didn't tell you that it was defective or anything. You told your attorneys it was defective right? . . . .
>
> A: Honest, yes, sir. Yes, sir.

PCR Tr. pp. 26-27. Elsewhere in his testimony, Sobin added, "I'm quite familiar with the Illinois statutes and I figured it out on my own[.]"). *Id.* at 9.

Nor does the record support Sobin's claim that he would have accepted the State's plea offer but for counsel's alleged omission. Presented with the State's

very favorable plea offer, Sobin rejected the deal flatly—not only professing his innocence but also identifying a different perpetrator. On these issues, the post-conviction court concluded that Sobin failed to meet his burden stating,

> Despite his self-serving statements at the evidentiary hearing, there is no reason to believe that [Sobin]'s decision to not plead guilty was predicated on his attorney's advice, or for that matter, even on his own understanding of the law. Instead his decision was based on his protestation of innocence. It is well-settled in Indiana that when an accused protests his innocence no guilty plea may be entered. . . . . Consequently, having failed to establish that he relied on the misadvice of counsel and having failed to establish that he would have pleaded guilty at all, the Court finds that [Sobin] has failed to meet his burden of proof.

App. Vol. II pp. 100-101.

[12] In light of the foregoing, Sobin cannot establish either deficient performance of counsel or a reasonable probability that he would have accepted the State's plea offer had he received effective assistance of counsel. Based on our review of the post-conviction relief hearing testimony and the transcript of the underlying proceedings, Sobin has failed to establish that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court.

## Conclusion

[13] Sobin has not established that he received ineffective assistance of trial counsel. We affirm.

Affirmed.

Najam, J., and Mathias, J., concur.